UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-14(DWF)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S POSITION ON** |
| | ) | **SENTENCING** |
| JAMES LESTER PARAMORE, | ) | |
| | ) | |
| Defendant. | ) | |

The United States, by its attorneys, Gregory G. Brooker, Acting United States Attorney for the District of Minnesota, and Angela M. Munoz-Kaphing, Assistant United States Attorney, hereby files this Position on Sentencing in support of its request that the Court sentence Defendant James Lester Paramore to a term of imprisonment of 210 months, followed by a twenty-year term of supervised release. Such a sentence is sufficient, but not greater than necessary to comply with the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation.

I.    **FACTUAL BACKGROUND**

A.    **The Instant Offenses**

In June 2016, Yahoo submitted a tip to the National Center for Missing and Exploited Children (NCMEC), reporting suspected sharing of child pornography via a Flickr account[1] associated with the email addresses "paramoredusty@yahoo.com" and

---

[1]    Flickr is a Yahoo application that can be used by the public to upload, access, organize, edit, and share photographs from any electronic device. PSR at ¶ 6.

"jamietaramore@yahoo.ca." *See* Presentence Report ("PSR") at ¶ 6. The Flick account

contained 1,246 images depicting child pornography, including 334 images of identified

child victims. PSR at ¶ 9. NCMEC referred these tips to the Minnesota Bureau of

Criminal Apprehension ("BCA"). After further investigation, the BCA determined that

the Defendant James Paramore was the account holder of the reported Flickr account. *Id.*

at ¶ 6.

On July 21, 2016, the BCA executed a search warrant at Mr. Paramore's home in

Lake Bronson, Minnesota. *Id.* at ¶ 7. During the execution of the search warrant, Special

Agent Adam Wright interviewed Mr. Paramore. *Id.* at ¶ 8. After being advised that he

was not under arrest and that he was under no obligation to speak to the agents, Mr.

Paramore made a voluntary, recorded statement to Special Agent Wright. *Id.* Mr.

Paramore admitted that he had a Flickr account, and that "paramourdusty@yahoo.com"

and "jamietaramore@yahoo.ca" were his email addresses. *Id.* Mr. Paramore admitted

that he possessed, uploaded, and viewed child pornography, and admitted using a VPN

encryption to prevent law enforcement from detecting his child pornography activities.

*Id.* Mr. Paramore admitted that his collection includes children as young as 10 years old

and that he is attracted to "everything – all ages." *Id.*

In addition to the 1,246 images located in his Flickr account, Mr. Paramore's child

pornography collection was stored on his cell phone (163 images and 67 video files), and

in a Dropbox account (83 images). *Id.* at ¶ 9. Mr. Paramore maintained a handwritten

log of child pornography websites, used electronic bookmarks to child pornography

websites on his electronic devices, and kept detailed notes regarding the use of VPN,

proxy servers, and encryption tools to prevent detection of his child pornography activities. *Id.* at ¶¶ 7-8.

The BCA obtained and executed a search warrant for Mr. Paramore's Facebook account. *Id.* at ¶ 10. The Defendant engaged in numerous, extensive conversations with other Facebook users where the Defendant shared information about child pornography websites, actively sought access to groups where he and other users could meet young children for the purpose of having sexual relationships, and exchanged child pornography and child erotica. *Id.* at ¶ 10.

The following Facebook messages are excerpts of a conversation that Mr. Paramore engaged in between June 2-8, 2016. Mr. Paramore's Facebook account was under the name "Dandychuck Koylaa."

> **Recipients:** Marco Calle, Dandychuck Koylaa
> **Author:** Dandychuck Koylaa
> **Sent:** 2016-06-02 06:23:23 UTC
> **Body:** That's how iam for the most part I go ad high as 10 Yrs old well Marco we can chat tomorrow okay it's 1:22am in the morning here goes a cp site you can go to little_taboo.org
>
> **Recipients:** Marco Calle, Dandychuck Koylaa
> **Author:** Dandychuck Koylaa
> **Sent:** 2016-06-02 06:23:44 UTC
> **Body:** Iam going to bed friend goodnight and we can chat tomorrow 5
>
> **Recipients:** Marco Calle, Dandychuck Koylaa
> **Author:** Marco Calle
> **Sent:** 2016-06-02 11:01:12 UTC
> **Body:** Is the address for the site correct?
>
> **Recipients:** Marco Calle, Dandychuck Koylaa
> **Author:** Dandychuck Koylaa
> **Sent:** 2016-06-03 01:20:37 UTC
> **Body:** Yes it's the correct address for that site go to es.yahoo.com and when you get there take off the yahoo filters and account by clicking on the

wheel on the right hand side and then click to preference

**Recipients:** Marco Calle, Dandychuck Koylaa
**Author:** Marco Calle
**Sent:** 2016-06-03 07:22:53 UTC
**Body:** Ok, I will try it.  Thank you

* * *

**Recipients:** Marco Calle, Dandychuck Koylaa
**Author:** Marco Calle
**Sent:** 2016-06-04 07:38:14 UTC
**Body:** It is a great site.  I like it

**Recipients:** Marco Calle, Dandychuck Koylaa
**Author:** Dandychuck Koylaa
**Sent:** 2016-06-04 07:39:11 UTC
**Body:** I am glad you like it now you beyond can get all of the pics and we can trade if that sounds okay with you?

* * *

**Recipients:** Marco Calle, Dandychuck Koylaa
**Author:** Dandychuck Koylaa
**Sent:** 2016-06-08 22:50:09 UTC
**Body:** Oh you will and we both need to stick together so we both can meet some boys and get pics iam looking for a pedo friend so I can go into business and make my own website to get paid let me know if you know you know if you interested

**Recipients:** Marco Calle, Dandychuck Koylaa
**Author:** Marco Calle
**Sent:** 2016-06-11 04:40:21 UTC
**Body:** Yes, I love having you as a friend.  So what is your idea?

**Recipients:** Marco Calle, Dandychuck Koylaa
**Author:** Dandy Chuck Koylaa
**Sent:** 2016-06-11 04:41:55 UTC
**Body:**  Making up our own website of cp porn and going into business with each other together

On June 12, 2016, Mr. Paramore sent "Marco Calle" the five child pornography images charged in Count 1 of the Information. *Id.* at ¶ 11; Dkt. No. 15.

On the day after the execution of the search warrant at Mr. Paramore's Lake Bronson home, law enforcement returned to the home to locate Mr. Paramore. *Id.* at ¶ 12. Law enforcement discovered that the Defendant and his fiancé moved out of the home and relocated to Orr, Minnesota and relocated a second time to International Falls, Minnesota.[2] *Id.* Mr. Paramore was ultimately arrested on a federal complaint in International Falls, Minnesota. *Id.*

## B. The Defendant's Prior Convictions

In March 2001, Mr. Paramore pled guilty to indecent exposure in Arizona. PSR at ¶ 43. This conviction occurred after Mr. Paramore demonstrated for a known 10-year-old boy how to masturbate by rubbing lotion on Mr. Paramore's own penis. *Id.* Following this demonstration, Mr. Paramore watched the boy rub lotion on the boy's own penis. *Id.* Based on this conviction, Mr. Paramore was required to register as a sex offender. *Id.* Mr. Paramore's violated the terms of his probation by failing to remain law-abiding, failing to register his current address, failing to attend a sex offender treatment session, and having

---

[2] Magistrate Judge Menendez ordered Mr. Paramore detained following his preliminary and detention hearing on December 1, 2016. *See* Dkt. No. 12. Magistrate Judge Menendez' decision was based in part on Mr. Paramore's post-search warrant flight. *See* Dkt. No. 12 ("The Court further concludes that the government has met its burden, showing by a preponderance of the evidence, that Mr. Paramore is a flight risk. The close proximity of the execution of the search warrant and the Defendant's move away from that residence, as well as Mr. Paramore's attempts to conceal the location of his vehicle, demonstrate an attempt to avoid additional contact with law enforcement.").

prolonged contact with minors. *Id.* Mr. Paramore ultimately served a 6-month sentence and a 9-month sentence for these violations. *Id.* at ¶¶ 43-44.

In November 2008, Mr. Paramore was convicted in Saskatchewan, Canada for possession of child pornography. *Id.* at ¶ 47. Mr. Paramore possessed child pornography depicting minors or both sexes posing for photographs and performing sexual acts. *Id.*

## II.    ARGUMENT AND CITATION OF AUTHORITIES

In 1984, Congress created the United States Sentencing Commission. *Mistretta v. United States*, 488 U.S. 361, 362, 366-367 (1989). The Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., directed that Commission to promulgate uniform guidelines that would be binding on federal courts at sentencing. *Id.* at 367. One purpose of the Guidelines was to address and eliminate sentencing disparities among similarly situated offenders. *See Koon v. United States*, 518 U.S. 81, 113 (1996); 28 U.S.C. § 991 (b)(1)(B). Congressional statutes instruct the Commission to carry out the objectives of 18 U.S.C. § 3553(a). *Rita v. United States*, 551 U.S. 338, 348 (2007). Significantly, as the United States Supreme Court observed in *Rita*:

> The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill this statutory mandate. They also reflect the fact that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment. . . . [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.

551 U.S. at 349, 350. Consequently, although the Guidelines are no longer mandatory, *see United States v. Booker*, 543 U.S. 220, 245-258 (2005), "[a]s a matter of administration

and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). "The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Peugh v. United States*, __U.S.__, 133 S.Ct. 2072, 2083 (2013).

In *Gall*, the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence. *Id*. at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A.  The Guidelines Range

The Government submits that the Presentence Report ("PSR") issued May 3, 2017, correctly calculates the applicable advisory Guidelines range. The PSR calculates an adjusted base offense level of 37 and a criminal history category of I, with a resulting advisory Guidelines range of 210 to 240 months.[3] The Government asks the Court to adopt the PSR's Guidelines calculations as its own.

---

[3] The advisory Guidelines range is 210 to 262 months. PSR at ¶ 74. However, the statutory maximum sentence is 20 years, and less than the maximum guideline range. Therefore, the applicable Guidelines range is 210 to 240 months. U.S.S.G. §5G1.1(c)(1).

**B.** **An Examination Of The 3553(a) Factors Demonstrates That A Sentence of 210 Months' Imprisonment Is Appropriate**

The district court may not assume that the Guidelines range is reasonable, but instead must make an individualized assessment based on the facts presented. *Gall*, 552 U.S. at 50. Section 3553(a) requires the Court to analyze a number of factors, including the history and characteristics of the Defendant, the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, and the need to protect the public from further crimes of the Defendant. 18 U.S.C. § 3553(a). An analysis of these factors shows that a sentence of 210 months is appropriate.

**1.** **History and Characteristics of the Defendant**

The Defendant is a 45-year-old man, who is before the Court on his third conviction relating to the sexual exploitation of children. PSR at ¶¶ 43-47. Mr. Paramore's criminal history includes an indecent exposure conviction involving a minor boy known to Mr. Paramore. Following this conviction, the Defendant further demonstrated a disregard for the law or the serious nature of his sex offender registration requirements by failing to register and leaving the state of Arizona without notice. *Id.* at ¶¶ 43-47.

Mr. Paramore was also convicted once before for possession of child pornography. *Id.* at ¶¶ 43-47. As explained by Mr. Paramore during his forensic psychological evaluation, his prior child pornography conviction did not serve as a deterrent for his future child pornography activities. *See* Psychological Evaluation at 3. Mr. Paramore did not think about this conviction while engaging in the activities leading to the current charge. *Id.*

Despite the serious nature of these offenses, Mr. Paramore's criminal history level is calculated as I under the Federal Sentencing Guidelines. The Government submits that Mr. Paramore's criminal history is underrepresented. The Defendant's convictions, in combination with the Defendant's current child pornography offenses, support a sentence of imprisonment of 210 months.

### 2. Nature and Circumstances of the Offense

The Defendant committed a serious crime that is deserving of appropriately serious punishment. Mr. Paramore's distribution of child pornography further victimizes children who were raped and brutalized for the sexual pleasure of adults. Mr. Paramore's distribution expands the market for videos and photographs of child rape and molestation.

The gravity of Mr. Paramore's offense is exacerbated by several factors. First, Mr. Paramore has already been conviction of a child pornography offense. Second, rather than simply possessing child pornography, Mr. Paramore has now engaged in the active distribution of child pornography. His Facebook communications, particularly with "Marco Calle" are disturbing. Mr. Paramore actively sought to trade child pornography with "Marco Calle" and provided him with specific directions on how to access a foreign child pornography website. Mr. Paramore further provided instructions on how "Marco Calle" could avoid detection by law enforcement. It was Mr. Paramore's desire to work with "Marco Calle" to create his own child pornography website so that he could profit from the further exploitation of children.

Mr. Paramore aggressively sought out other like-minded individuals so that he could gain access to minor children. He boasted about having a young boyfriend and delighted

in exchanging pictures of young girls being tortured. Mr. Paramore's Facebook account included numerous photographs of minor children subjected to torture and violence.

Mr. Paramore stored and accessed his extensive child pornography collection using multiple electronic devices, multiple social media accounts, multiple email addresses, and multiple software applications. He affirmatively took steps to hide his child pornography activities from law enforcement by using proxy servers, encryption tools and VPN networks.

The Defendant's offense was part of a long-standing pattern of seeking sexual gratification from child pornography and deserves significant consequences.

### 3. The Need for Deterrence

In this case, there is a need for both individualized and general deterrence. Individualized deterrence is that which discourages the Defendant from ever committing similar crimes again. Clearly, the Defendant's previous experience with the criminal justice system did nothing to deter him from engaging in the exact same behavior. Only a significantly more onerous sentence is likely to influence the Defendant's future behavior. Accordingly, a sentence of 210 months' imprisonment is an appropriate attempt to deter the Defendant from committing this crime or a similar crime again in the future.

A significant sentence is also important as a general deterrent. General deterrence is the public response necessary to deter other people from committing similar crimes. "Congress has specifically made general deterrence an appropriate consideration under 3553(a)(2)(B), [it is] one of the key purposes of sentencing." *Ferguson v. United States*, 623 F.3d 627, 631-32 (8th Cir. 2010). Moreover, Congress, the United States Supreme

Court, and the United States Sentencing Commission have made clear that general deterrence is a very important sentencing goal in child pornography offenses. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product") (citing *Ferber*, 458 U.S. at 760), *cert. denied*, 563 U.S. 917 (2011). In *United States v. Goldberg*, 491 F.3d 668 (7th Cir.), *cert. denied*, 552 U.S. 1041 (2007), the court discussed the goal of general deterrence:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

491 F.3d at 672.

The Court is in a position to send a strong message to those like the Defendant who seek and derive sexual pleasure watching and proliferating on the internet the abuse and exploitation of children. A sentence of imprisonment of 210 months is appropriate as both an individual deterrent and a general deterrent.

### 4.     The Need to Protect the Public From Further Crimes Of This Defendant

In sentencing the Defendant, the Court must weigh the need to protect the public from his future crimes. *See* 18 U.S.C. § 3553(a)(2)(C). "The basic task is to predict the

likelihood that the offender will commit further offenses, assess the potential seriousness of those offenses, and determine the need to incapacitate the offender as a prophylactic measure." *Irey*, 612 F.3d at 1238. In considering his likelihood of recidivism, "a court may take into account any evidence of obvious incorrigibility and conclude that leniency has not been effective." *United States v. Gant*, 663 F.3d 1023, 1030 (8th Cir. 2011) (quoting *United States v. Walking Eagle*, 553 F.3d 654, 657 (8th Cir. 2009)).

The Defendant's previous conviction for possession of child pornography, his previous conviction for indecent exposures and the prolific nature of his current child pornography activities, demonstrate a substantial risk of recidivism. Mr. Paramore knowingly engaged in the consumption and distribution of child pornography despite his previous convictions. And, even though he knew it was wrong, he knowingly engaged in this behavior and could not control himself. Consequently, a sentence of imprisonment of 210 months is necessary to protect the public from the Defendant's further crimes.

### C. Twenty Years of Supervised Release Is Appropriate Under The Circumstances Present Here

A lengthy term of supervised release is also important to protecting the public from Mr. Paramore, and to ensure his compliance with the law. The law requires at least five years of supervised release, and permits the imposition of lifetime supervised release. *See* 18 U.S.C. § 3583(k). Given the nature of the offense and Mr. Paramore's criminal history and inability to control his sexual desires, twenty years of supervised release is warranted. As noted herein, Mr. Paramore has demonstrated that he is either unwilling or unable to refrain from consuming and distributing child pornography. He has also demonstrated a significant interest in incestuous relationships and having a minor child as a boyfriend. Mr.

Paramore must be supervised following his release from prison in order to ensure that he lives a law-abiding life in the future.

### D. Restitution

The Government understands that the Defendant's counsel is attempting to negotiate a restitution settlement with the five sets of victims who are seeking restitution in this case. If a settlement has not been reached with these victims at the time of sentencing, the Government will seek additional time to resolve the victim's requests.

## III. CONCLUSION

For the reasons set forth above, the Government respectfully asks the Court to sentence the Defendant to imprisonment for a term of 210 months, followed by a twenty-year term of supervised release. The requested sentence is commensurate with the Defendant's criminal conduct and consistent with the Section 3553(a) factors. Most importantly, under all the facts and circumstances of this case, it is also fair and just.

Dated: July 19, 2017

Respectfully Submitted,

GREGORY G. BROOKER
Acting United States Attorney

*/s/ Angela M. Munoz-Kaphing*

BY: ANGELA M. MUNOZ-KAPHING
Assistant U.S. Attorney